**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| | ) | Case No: 20-01252 |
| Sohail A. Shakir, | ) | |
| | ) | Hon. Donald R. Cassling |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Philip V. Martino, not individually, but | ) | |
| solely in his capacity as Chapter 7 Trustee | ) | |
| for the bankruptcy estate of Sohail A. Shakir, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. No. 20-_____ |
| v. | ) | |
| | ) | |
| Sohail A. Shakir; Rubina Shakir, | ) | |
| Osama Shakir; Hamza Shakir; Surrosh | ) | |
| Shakir; Green Dot Builders, LLC; | ) | |
| RSS Homes, LLC; The Rubina Shakir 2002 | ) | |
| Living Trust, and 550 22nd LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

Philip V. Martino, not individually, but solely as Chapter 7 Trustee (the "**Trustee**") of the bankruptcy estate of Sohail A. Shakir, by and through his attorneys, Kevin A. Sterling and Laura Newcomer Cohen of The Sterling Law Office LLC, states as follows for his complaint against Sohail A. Shakir; Rubina Shakir, Osama Shakir; Hamza Shakir; Surrosh Shakir; Green Dot Builders, LLC; RSS Homes, LLC; The Rubina Shakir 2002 Living Trust; and 550 22nd LLC:

### **Introduction**

1. This case involves pre-petition fraudulent transfers of assets owned and controlled by Sohail Shakir (the "**Debtor**") to or for the benefit his wife, adult daughter and two adult sons. The purpose of such transfers was to remove Debtor's interest in and income from his businesses

1

from the reach of his creditors.

2. Over a substantial period of time, as far back as 2011, with the express or tacit understanding and cooperation from his wife, Rubina Shakir, and his three adult children, Osama Shakir, Hamza Shakir, and Surrosh Shakir, Debtor has embarked upon, has perpetrated, and continues to perpetrate a scheme whereby he uses his solely owned construction company as his personal piggy bank, and has his immediate family members serve as a "front" to hold legal title to ownership interests in one or more of his companies and/or real properties. Through this scheme, Debtor has and continues to divert millions of dollars of his assets and income to his immediate family to pay for his family's personal expenses and enjoy a lavish lifestyle to the detriment of Debtor's creditors.

3. Through such companies, Debtor (as sole manager) devotes his time, talents, expertise, and resources without any direct compensation in the identification and exploitation of remunerative real estate investment opportunities for such companies, and such real properties represent the product of his efforts.

4. By this action, the Trustee seeks to remedy the fraud and other injustices caused by Debtor and the other defendants by: (a) obtaining a declaration that RSS Homes, LLC; Green Dot Builders, LLC; 550 22nd LLC, and any other sham entities that Debtor, the Defendants, or their agents created, are property of the bankruptcy estate; (b) obtaining a declaration that all monies diverted to the Debtor's wife's bank and investment accounts are property of the bankruptcy estate, (c) obtaining a declaration that the value of the Debtor's residence is property of the Estate; and (d) having a turnover order or judgment entered against the Defendants in the amount of the transfers made to the Defendants from Debtor from January 1, 2015 through the date of the judgment.

**Jurisdiction and Venue**

5. This Court has jurisdiction over Counts I, II, IV, V, VII, VIII, X, and XI as "core" proceedings pursuant to 28 U.S.C. § 1334(b) and (e), 28 U.S.C. 157(a), (b)(1), (b)(2)(A), (E), and (O).

6. This Court has jurisdiction over the remaining counts as "related to" proceedings pursuant to 28 U.S.C. § 1334(b) and (e), 28 U.S.C. 157(c). With respect to such Counts, pursuant to Bankruptcy Rule 7008, the Trustee consents to entry of final orders and judgment by the Bankruptcy Court.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**Parties**

8. Debtor is a citizen of Illinois and has resided for many years at 3760 Sunset Lane, Northbrook, Illinois, which on information and belief is an approximately 7,500 square foot luxury home where he currently resides with his wife and three adult children.

9. Rubina Shakir ("**Rubina**") is the wife of Debtor. Rubina has resided for many years at 3760 Sunset Lane, Northbrook, Illinois with Debtor, and has been described by the Debtor as a housewife.

10. Osama Shakir ("**Osama**") is the son of Debtor. Osama resides at 3760 Sunset Lane, Northbrook, Illinois with Debtor, and has been described by the Debtor as a graduate student awaiting his MCAT results.

11. Hamza Shakir ("**Hamza**") is the son of Debtor. Hamza resides at 3760 Sunset Lane, Northbrook, Illinois with Debtor, and has been described by the Debtor as a graduate student.

12. Surrosh Shakir ("**Surrosh**") is the daughter of Debtor. Surrosh resides at 3760 Sunset Lane, Northbrook, Illinois with Debtor, and has been described by the Debtor as disabled and unable to work.

13. RSS Homes, LLC is an Illinois limited liability company. Debtor is the sole manager of RSS Homes, LLC, but the membership interest in RSS Homes, LLC is owned 70% by Rubina and 10% each by Osama, Hamza, and Surrosh.

14. Green Dot Builders, LLC is an Illinois limited liability company. Debtor is the sole manager, member, and employee of Green Dot Builders, LLC.

15. 550 22nd LLC is an Illinois limited liability company. Debtor is the sole manager of 550 22nd LLC.

## **Background**

16. Over the course of the last 30 years, Debtor has owned gas stations, hotels, restaurant franchises, and an apartment complex, and he has operated many restaurants. Debtor has also worked in real estate development in building and selling homes.

17. On February 21, 2014, Debtor personally guaranteed a ground lease and the construction of a multi-million-dollar banquet hall at the Villa Oaks Shopping Center in Villa Park, Illinois.

18. Debtor never commenced construction of the banquet hall, thereby facing a significant liability to Villa Oaks as of 2014.

19. Ultimately, on November 21, 2019, after trial, a judgment was entered against Debtor, as a guarantor, totaling $5,156,727.56, which judgment became final and appealable on January 2, 2020.

**A.   This Chapter 7 Case**

20. A personal financial statement for Debtor and Rubina dated December 31, 2015 shows their having a net worth of $11,346,000.

21. On January 16, 2020 (the "**Petition Date**"), Debtor filed his voluntarily petition for relief under Chapter 7, which Debtor had executed under oath on December 17, 2019. (ECF Doc. 1).

22. On January 30, 2020, Debtor filed Schedules and Statements of Financial Affairs, in which Debtor:

    (a)    Identifies no income received from January 1, 2018 to January 16, 2020;

    (b)    Identifies that his wife (Rubina) receives $5,000 per month in income;

    (c)    Identifies no checking, savings, or other financial accounts titled in his name; and

    (d)    Identifies a 100% ownership interest in Green Dot Builders, LLC with a value of $0.00.

(*See* Debtor's Official Form 107, ECH Doc. 13 at p. 2; Form 122A-1, ECF Doc. 14; Form 107, ECH Doc. 13 at p. 9; Form 106A/B, ECF Doc. 12 at p. 5).

**B.    In anticipation of his significant personal liability, Shakir has used his immediate family as a "front" to hold legal title to his companies and assets.**

23. Debtor operates and has a 100% ownership interest in Green Dot Builders, LLC ("**Green Dot**"), a construction company.

24. Debtor does not keep any records for Green Dot Builders, nor does he have a general ledger or keep QuickBooks.

25. Debtor is also the sole manager of RSS Homes, LLC, and the members are his wife, Rubina (70%), and his three adult children, Osama (10%), Hamza (10%), and Surrosh (10%).

26. RSS Homes owns the real property located at 1044 Swift Road, Glen Ellyn, Illinois, and is currently constructing 24-unit condominium development on the Glen Ellyn Property called Georgetown by the River (the "**Glen Ellyn Development**"), with 12 units already constructed and 12 yet to be completed.

27. Green Dot **does not charge** RSS Homes for its general contractor services.

28. The Construction Agreement between Green Dot and RSS Homes for construction of the Glen Ellyn Development states that "Owner agrees to pay Contractors the total amount of $0.00." *See* Construction Contract Agreement, ¶ 2, attached hereto as **Exhibit A**.

29. Nevertheless, in RSS Homes' 2018 tax return, RSS Homes showed an ending liability owed to Green Dot totaling $969,652.00.

30. As recently as January 17, 2020, RSS Homes received $133,743.27 from the sale of Unit 1D in the Glen Ellyn Development, and on January 31, 2020, RSS Homes received $141,152.95 from the sale of Unit 1C. *See* RSS Homes Checking Account Statement, attached hereto as **Exhibit B**.

31. As of September 3, 2020, only five of the twelve constructed condominiums had been sold.

**1. Debtor is the true owner of RSS Homes and developer of the Glen Ellyn Development and purposefully placed his immediate family as nominal members of RSS Homes.**

32. From the outset, Debtor has been the true owner and developer of the RSS Homes Development.

33. To obtain approvals from the City of Glen Ellyn for the RSS Homes Development, Debtor held himself out as the developer and cited his prior experience in building gas stations, apartments, townhomes, and a Candlewood Suites.

34. Based on Debtor's prior testimony in a 2018 deposition (relevant portions of which are attached a s **Exhibit C**), Debtor's wife and adult children do not possess the knowledge, skills, or experience to orchestrate the completion of the Glen Ellyn Development from beginning to end.

35.     Debtor has invested his time, knowledge, skill, and experience in RSS Homes and other business endeavors to support his family's lavish lifestyle, all while he claims **no income or compensation** and remains indebted to creditors.

36.     Proceeds from sales of the townhome units are solely the result of Debtor's labor and skill as a developer and general contractor, yet he diverts the fruits of his labor to his wife and adult children with the intent to shield assets from his creditors.

**2. The Green Dot Bank Account controlled by Debtor receives frequent and significant deposits and is used for his and his family's personal expenses.**

37.     From September 1, 2019 to January 31, 2020, the Green Dot checking account had deposits totaling $317,378.33. *See* Green Dot Checking Account Statements attached hereto as **Group Exhibit D**.

38.     In January of 2020, two checks in the amount of $79,000.00 and $15,000.00 were written from the RSS Homes checking account and deposited in the Green Dot Builders checking accounts on January 21, 2020. *See* RSS Homes Checking Account Statement, attached hereto as **Exhibit C** at Shakir 0249; *See also* Green Dot Checking Account Statements attached hereto as **Group Exhibit D** at Shakir 0244.

39.     During the year leading up to the filing of the Chapter 7 case, substantial funds were transferred from a savings account, a money market account, and a TD Ameritrade Account (which on information and belief are all titled in Rubina's name) to the Green Dot Checking Account.

40.     Debtor is the sole member and manager of Green Dot and the sole signer on the Green Dot checking account.

41.     Rather than taking compensation or holding an account in his own name, Debtor caused Green Dot to make numerous and substantial payments from the business bank account for the family's personal expenses, including, but not limited to:

7

    (a)    Property tax payments on the family's personal residence;

    (b)    Tuition payment to Dominican University for his son, Osama;

    (c)    Abercrombie & Fitch;

    (d)    Victoria's Secret;

    (e)    Macy's;

    (f)    Von Maur;

    (f)    Oakton College; and

    (g)    Payment to a handwriting expert in a lawsuit where Shakir was sued personally.

*See* Green Dot Bank Account Statements, **Group Exhibit D**.

42. Rather than taking compensation or holding an account in his own name, Debtor caused Green Dot to make credit card payments from the business bank account for personal credit cards for himself and family. Such credit cards include, but are not limited to:

    (a)    Sam's Discover Card;

    (b)    Sam's Chase Freedom Card;

    (c)    Hamza's Costco Citi Card;

    (d)    Hamza's Amazon Card;

    (e)    BMW of North America;

    (f)    Surrosh's Best Buy Card;

    (g)    Surrosh's Capital One Card; and

    (h)    Osama's Chase Sapphire Card.

*See* Green Dot Bank Account Statements, **Group Exhibit D**.

## COUNT I
### (Declaratory Relief - Green Dot and RSS Homes)

43. The Trustee re-alleges paragraphs 1 through 42 as though fully set forth herein.

44. Green Dot Builders and RSS Homes, and all of their assets and income, are rightful property of Debtor's bankruptcy estate (the "**Estate**").

45. Green Dot Builders and RSS Homes were formed and operate to implement a fraud on the creditors of the Debtor and this Estate.

46. Maintaining the fiction of the separate "identities" of Green Dot Builders and RSS Homes from that of the Debtor would sanction a fraud and promote injustice.

47. Green Dot Builders and RSS Homes have diverted income to the individual defendants named herein to the detriment Debtor's creditors.

48. Green Dot Builders and RSS Homes have failed to observe corporate formalities.

49. Green Dot Builders and RSS Homes have failed to maintain an arm's length relationship among themselves and the Debtor, but rather have comingled assets and income with Debtor.

50. Green Dot Builders and RSS Homes are a mere façade created to implement the fraud described herein.

51. The Debtor has either directly or indirectly controlled, or substantially benefitted from the assets and the income from Green Dot Builders and RSS Homes since their inception.

WHEREFORE, for all of the foregoing reasons, the Plaintiff Trustee requests that this Court enter a judgment declaring that the Green Dot Builders and RSS Homes businesses, including all of their assets and income, are property of the Estate, and for all other relief this court deems just and equitable.

## COUNT II
### (Turnover Pursuant To 11 U.S.C. § 542)
### (Green Dot and RSS Homes)

52. The Trustee re-alleges paragraphs 1 through 42 and 44 through 51 as though fully set forth herein.

53. Section 542 of the Bankruptcy Code provides for a turnover of property of the Estate.

54. If the Green Dot Builders and RSS Homes businesses, and their assets and income, are declared to be property of the Estate, such assets and income must then be turned over to the Trustee.

WHEREFORE, for all of the foregoing reasons, the plaintiff Trustee requests that the Court enter a judgment order requiring the Defendants to turn over all property declared and/or found to be property of the Estate in this action, including but not limited to, the Green Dot Builders and RSS Homes businesses and all of their assets and income, plus all other relief this Court deems just and equitable.

## **COUNT III**
### **(Constructive Trust - Green Dot and RSS Homes)**

55. The Trustee re-alleges paragraphs 1 through 42 and 44 through 51 as though fully set forth herein.

56. A constructive trust is a device used to compel one who unfairly holds property to convey the property to the party to whom it justly belongs.

57. The Green Dot Builders and RSS Homes businesses, and their assets and income, justly belong to the Debtor and this Estate.

58. The Debtors and his immediate family will be unjustly enriched if they are allowed to keep the income derived from the Green Dot Builders and RSS Homes businesses to the detriment of the Debtor's creditors.

59. As detailed above, the dealings of the Green Dot Builders and RSS Homes businesses, including diversions of their assets and income by Debtor and his immediate family members, are the result of fraud and simply an attempt to intentionally defeat, hinder, delay and/or defraud creditors of the Debtor and this Estate.

60. Consequently, a constructive trust should be imposed over the assets and income of the Green Dot Builders and RSS Homes businesses, including their assets and income, in favor of the Trustee for the benefit of the Estate.

WHEREFORE, the Trustee requests that this court impose a constructive trust on the assets and income generated by the Green Dot Builders and RSS Homes businesses in favor of the Trustee for the benefit of the creditors, and for all other relief this court deems just and equitable.

## COUNT IV
### (Declaratory Relief – Debtor's Residential Property)

61. The Trustee re-alleges paragraphs 1 through 42 as though fully set forth herein.

62. On information and belief, Debtor's assets and income were used to purchase the Debtor's residence at 3760 Sunset Lane, Northbrook, Illinois (the "**Residence**") on February 28, 1991 in the names of Debtor and Rubina Shakir.

63. Debtor's assets and income were the sole source of funds used to pay for the maintenance of and property taxes for the Residence.

64. On information and belief, on November 12, 2011, Debtor and Rubina Shakir conveyed the Residence to the Rubina Shakir 2002 Living Trust (the "**Trust**") for zero or inadequate consideration.

65. After conveying the Residence to the Trust, Debtor's assets and income continued to be the sole source of funds to pay for the maintenance of and property taxes for the Residence, including payments from the Green Dot Bank Account. *See* Green Dot Bank Account Statements, **Group Exhibit D**.

66. Despite legal title being in Rubina Shakir's Trust, Debtor has retained actual ownership and control of the Residence.

11

67. The Debtor's residence, in whole or in part, is rightful property of the Estate.

68. Debtor's residence was transferred from Debtor and his wife to the Rubina Shakir 2002 Living Trust to implement a fraud on the creditors of the Debtor and this Estate.

69. The equity in the Residence justly belongs to the Debtor and this Estate.

WHEREFORE, for all of the foregoing reasons, the Plaintiff Trustee requests that this Court enter a judgment declaring that the Residence is property of the Estate, and for all other relief this court deems just and equitable.

## COUNT V
### (Turnover Pursuant To 11 U.S.C. §542)
### (Debtor's Residential Property)

70. The Trustee re-alleges paragraphs 1 through 42 and 62 through 69 as though fully set forth herein.

71. Section 542 of the Bankruptcy Code provides for a turnover of property of the Estate.

72. If the Debtor's residence is declared to be property of the Estate, it must then be turned over to the Trustee.

Wherefore, for all of the foregoing reasons, the plaintiff Trustee requests that the Court enter a judgment order requiring the Defendants to turn over all property declared and/or found to be property of the Estate in this action, including but not limited to, the Residence, plus all other relief this Court deems just and equitable.

## COUNT VI
### (Constructive Trust – Debtor's Residential Property)

73. The Trustee re-alleges paragraphs 1 through 42, 62 through 69, and 71 through 72 as though fully set forth herein.

74. The equity in the Residence justly belongs to the Debtor and this Estate.

75. The Rubina Shakir 2002 Living Trust has been and will continue to be unjustly enriched if it is permitted to keep the equity and value of the Residence derived from the funds Debtor contributed for the purchase the Residence, payment of property taxes, and maintenance of the Residence, when such funds were diverted from Debtor's creditors.

76. Consequently, a constructive trust should be imposed over the equity of the Residence in favor of the Trustee for the benefit of the Estate.

WHEREFORE, the Trustee requests that this court impose a constructive trust on the Residence in favor of the Trustee for the benefit of the creditors, and for all other relief this court deems just and equitable.

## COUNT VII
### (Declaratory Relief – Rubina's Bank and Investment Accounts)

77. The Trustee re-alleges paragraphs 1 through 42 as though fully set forth herein.

78. Debtor's assets and income were the sole source of funds to accumulate wealth for his family.

79. However, at all relevant times, all or a substantial portion of income derived from Debtor's time, knowledge, skill, and experience were deposited in bank and investment accounts in Rubina's name, including but not limited to a savings account, a money market account, a TD Ameritrade Account, out of the reach of Debtor's creditors.

80. Despite legal title being in Rubina's name, Debtor has retained control over the bank and investment accounts.

81. Rubina's bank and investment accounts are the rightful property of the Estate.

WHEREFORE, for all of the foregoing reasons, the Plaintiff Trustee requests that this Court enter a judgment declaring that the bank and investment accounts in Rubina Shakir's name are property of the Estate, and for all other relief this court deems just and equitable.

## COUNT VIII
### (Turnover Pursuant To 11 U.S.C. §542)
### (Rubina's bank and investment accounts)

82. The Trustee re-alleges paragraphs 1 through 42 and 78 through 81 as though fully set forth herein.

83. Section 542 of the Bankruptcy Code provides for a turnover of property of the Estate.

84. If Rubina's savings account, money market account, TD Ameritrade Account and any other bank or investment accounts are declared to be property of the Estate, such accounts must then be turned over to the Trustee for the benefit of Debtor's creditors.

WHEREFORE, for all of the foregoing reasons, the plaintiff Trustee requests that the Court enter a judgment order requiring the Defendants to turn over all monies declared and/or found to be property of the Estate in this action, including but not limited to, Rubina's savings account, money market account, TD Ameritrade Account and any other bank or investment accounts, plus all other relief this Court deems just and equitable.

## COUNT IX
### (Constructive Trust – Rubina's bank and investment accounts)

85. The Trustee re-alleges paragraphs 1 through 42, 78 through 81, and 83 through 84 as though fully set forth herein.

86. The monies in Rubina's savings account, money market account, TD Ameritrade Account and any other bank or investment accounts justly belongs to the Debtor and this Estate.

87. Rubina Shakir has been and will continue to be unjustly enriched if it is permitted to keep the monies in Rubina's savings account, money market account, TD Ameritrade Account and any other bank or investment accounts, to the detriment of the Debtor's creditors.

88. Consequently, a constructive trust should be imposed over Rubina's savings account, money market account, TD Ameritrade Account and any other bank or investment

accounts in favor of the Trustee for the benefit of the Estate.

WHEREFORE, the Trustee requests that this court impose a constructive trust on Rubina's savings account, money market account, TD Ameritrade Account and any other bank or investment accounts in favor of the Trustee for the benefit of the creditors, and for all other relief this court deems just and equitable.

## COUNT X
### (Declaratory Relief - Lombard Property)

89. The Trustee re-alleges paragraphs 1 through 42 as though fully set forth herein.

90. Prior to December 2, 2015, Debtor was in the process of acquiring the parcel of land located at 550 East 22nd Street, Lombard, Illinois (the "**Lombard Property**").

91. On or about December 2, 2015, a Quit Claim Deed was prepared for the Lombard Property identifying Debtor as the Grantor, however, to avoid possessing any assets, the Grantor was changed to RSS Homes.

92. The recorded Quit Claim Deed for the Lombard Property reflecting such change is attached hereto as **Exhibit E**.

93. Between December 2015 through some time in 2019, Debtor, as developer, pursued authorization from the Village of Lombard to construct a four-story 96-room Hilton Tru Hotel.

94. On November 2, 2018, via a Quit Claim Deed executed by Debtor as manager, RSS Homes conveyed the Lombard Property to 550 22nd LLC, and a copy of such Quit Claim Deed is attached hereto as **Exhibit F**.

95. A search of the records of the Illinois Secretary of State's website reveals that Debtor is the sole manager and registered agent for 550 22nd LLC and that the principal office of the 550 22nd LLC is located at Debtor's home address.

15

96. The transfer of the Lombard Property to 550 22nd LLC was done with the intent of putting the interest in the Lombard Property further out of the reach of Debtor's creditors.

97. The interest in the Lombard Property or the Lombard Property itself should be deemed an asset of the Debtor's Estate.

98. 550 22nd LLC is a mere façade created to implement the fraud described herein.

99. The Debtor has either directly or indirectly controlled, or substantially benefitted from the assets and the income from 550 22nd LLC since its inception.

WHEREFORE, for all of the foregoing reasons, the Plaintiff Trustee requests that this Court enter a judgment declaring that the interest in 550 22nd LLC, or the Lombard Property itself, including all of its assets and income, are property of the Estate, and for all other relief this court deems just and equitable.

## COUNT XI
## (Turnover Pursuant To 11 U.S.C. § 542)
## (Lombard Property)

100. The Trustee re-alleges paragraphs 1 through 42 and 90 through 99 as though fully set forth herein.

101. Section 542 of the Bankruptcy Code provides for a turnover of property of the Estate.

102. If the 550 22nd LLC business, and its assets and income, are declared to be property of the Estate, such assets and income must then be turned over to the Trustee.

WHEREFORE, for all of the foregoing reasons, the plaintiff Trustee requests that the Court enter a judgment order requiring the Defendants to turn over all property declared and/or found to be property of the Estate in this action, including but not limited to, the interest in 550 22nd LLC, or the Lombard Property itself, including all of its assets and income, plus all other relief this Court deems just and equitable.

16

**COUNT XII**
**(Constructive Trust - 550 22nd LLC)**

103. The Trustee re-alleges paragraphs 1 through 42 and 90 through 99, and 101 through 102 as though fully set forth herein.

104. A constructive trust is a device used to compel one who unfairly holds property to convey the property to the party to whom it justly belongs.

105. 550 22nd LLC and its assets and income justly belong to the Debtor and this Estate.

106. The Debtors and his immediate family will be unjustly enriched if they are allowed to keep the income derived from the 550 22nd LLC business to the detriment of the Debtor's creditors.

107. As detailed above, the dealings of the 550 22nd LLC business, including diversions of its assets and income by Debtor and his immediate family members, is the result of fraud and simply an attempt to intentionally defeat, hinder, delay and/or defraud creditors of the Debtor and this Estate.

108. Consequently, a constructive trust should be imposed over the assets and income of the 550 22nd LLC business, including its assets and income, in favor of the Trustee for the benefit of the Estate.

WHEREFORE, the Trustee requests that this court impose a constructive trust on the interest in 550 22nd LLC, or the Lombard Property itself, including all of its assets and income, in favor of the Trustee for the benefit of the creditors, and for all other relief this court deems just and equitable.

Dated: January 11, 2021               Respectfully submitted,

                                      PHILIP V. MARTINO, not individually, but solely
                                      as Chapter 7 Trustee


                                      By: */s/ Kevin A. Sterling*
                                          One of Its Attorneys


Kevin A. Sterling (No. 6216907)
Laura Newcomer Cohen (No. 6302639)
THE STERLING LAW OFFICE LLC
411 North LaSalle Street, Suite 200
Chicago, Illinois 60654
Ph: (312) 670-9744
kevin@thesterlinglaw.com
laura@thesterlinglaw.com

18